FILED

2012 Sep-28  PM 04:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **LOUISE MOORE,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | |
| | } | **CASE NO. 2:11-cv-1391-SLB** |
| **WALTER COKE, INC.,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION</u>

This case is before the court on defendant, Walter Coke, Inc.'s Motion to Dismiss plaintiff's Amended Class Action Complaint. (Doc. 9.)[1] Upon consideration of defendant's Motion, the supporting and opposing memoranda, arguments of counsel and the relevant law, the court finds, for the reasons stated below, that defendant's Motion will be granted in part and denied in part as follows:

Defendant's Motion to Dismiss on the basis of Alabama's rule of repose will be denied, because at this time, the court has insufficient evidence to determine exactly when plaintiff's first injury occurred. However, the court finds that Section 309 of CERCLA applies to Alabama's rule of repose.

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

The defendant's Motion to Dismiss on the basis of plaintiff's failure to sufficiently plead an ascertainable class will be granted.  However, plaintiff will be given leave to amend her class allegation.

The defendant's Motion to Dismiss on the basis of plaintiff's failure to sufficiently plead valid state law claims of trespass, nuisance, wantonness, and negligence will be denied. However, defendant's Motion Dismiss regarding plaintiff's claim for injunctive relief will be granted because plaintiff does not plead the necessary elements for such relief.

## STANDARD OF REVIEW

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted.  To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint "does not need detailed factual allegations;" however, the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).[2]  "Factual allegations must

---

[2]In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court abrogated the oft-cited standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," which was set forth in *Conley v. Gibson.  See Twombly,* 550 U.S. at 561 (quoting *Conley,* 355 U.S. 41, 45-46 (1957)).  The Supreme Court stated that the "no set of facts" standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563.  The "decision in *Twombly* expounded the pleading standard for 'all civil actions.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1953 (2009).

be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.*  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

"When considering a motion to dismiss, all facts set forth in plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (per curiam) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)).  All "reasonable inferences" are drawn in favor of the plaintiff.  *St. George v. Pinellas Cnty.,* 285 F.3d 1334, 1337 (11th Cir. 2002).  "'[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal.'"  *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In her Amended Complaint, plaintiff Louise Moore ("plaintiff") asserts, on behalf of herself and a proposed class of similarly situated persons, various state law claims against defendant, Walter Coke, Inc. ("defendant").  (Doc. 6 ¶ 1.)  Plaintiff is an adult resident citizen of Jefferson County, Alabama and resides in North Birmingham. (*Id.* ¶ 5.) Defendant is a Delaware corporation with its principal place of business in Wilmington, Delaware. (*Id.* ¶ 6.) Defendant operates and has operated furnaces in North Birmingham, Jefferson County,

3

Alabama, where it produces "furnace and foundry coke, and slag fiber." (*Id.* ¶¶ 7-16.) The

Amended Complaint outlines the operational history of some of defendant's facilities in the

Birmingham area:

- In 1881 defendant constructed "two Blast Furnaces, now known as the City Furnaces." Around that time, "two more blast furnaces were built in North Birmingham." (*Id.* ¶ 8.)

- "In 1918 the construction of a By-Product Recovery Coke Plant commenced . . . which included 120 3.7 meter Semet Solvay coke Ovens." (*Id.* ¶ 9.)

- "Three more coke oven batteries and an additional blast furnace were constructed in North Birmingham between 1951 and 1958." (*Id.* ¶ 10.)

- "The operation of the old Semet Solvay coke oven batteries and all the blast furnaces ceased by the end of 1980." However, defendant's "coke oven batteries built in Jefferson County, Alabama in the 1950's continue" to operate. (*Id.* ¶¶ 12, 13.)

Plaintiff alleges that in the course of defendant's operations in North Birmingham, it

"deposited and deposit[s] various waste substances" on her property and/or defendant

"allow[s] such substances and materials to migrate to and/or become located on Plaintiff's

property through emissions in the air and/or flow from surface water, ground water or

discharge into waterways." (*Id.* ¶ 17.) Plaintiff claims her property has been damaged in the

form of depreciated value and that the removal of hazardous substances is needed. (*Id.* ¶ 21.)

Based on these allegations, plaintiff, on behalf of herself and a proposed class, asserts against

defendant state law claims of negligence, wantonness, nuisance, trespass, and a claim for

injunctive relief. (*See id.* ¶¶ 24-48.)

4

Defendant moved to dismiss plaintiff's claims on the following grounds:

1.      Alabama's twenty-year common law rule of repose bars all claims asserted in Plaintiff's Amended Complaint;

2.      All putative class allegations in the Amended Complaint must be dismissed for failure to state a claim under FED. R. CIV. P. 23; and

3.      Plaintiff's Amended Complaint fails to adequately plead claims for negligence, nuisance, trespass, wantonness, and injunctive relief under the pleading standards articulated by the U.S.Supreme Court in *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal* 129 S. Ct. 1937 (2009).

(Doc. 9 at 1-2.)

## DISCUSSION

### I.      Alabama's Rule of Repose

Defendant's Memorandum of Law in Support of Its Motion to Dismiss asserts that all of plaintiff's claims are barred by application of Alabama's rule of repose.  (Doc. 9-1 at 4.)  The court finds that at this early stage of litigation there is insufficient evidence to determine when exactly plaintiff's alleged injuries first occurred and triggered the repose time limit. Accordingly, for the reasons discussed below, defendant's Motion to Dismiss based on its argument that the rule of repose bars all claims will be denied.

### A.  Rule of Repose: Background

Alabama's longstanding rule of repose is derived from common law and "serves to bar claims that arise out of events that are more than twenty years old." *Moore v. Liberty*

*Nat'l Life Ins. Co.*, 267 F.3d 1209, 1213 (11th Cir. 2001) (citing *Ex parte Grubbs*, 542 So.

2d 927, 930-31 (Ala. 1989)); *see also Boshell v. Keith*, 418 So. 2d 89, 91-92 (Ala. 1982)

(discussing Alabama's rule of repose and noting the first recognition of the rule in 1858).

The rule is founded on the concept that after a significant passage of time, it is equitable to

bar claims, regardless of when the plaintiff actually discovered the harm, if the injury arose

more than twenty years before legal redress is sought:

> [I]t has long been the settled policy of this state . . . that
> antiquated demands will not be considered by the courts, and
> that, without regard to any statute of limitations, there must be
> a time beyond which human transactions will not be inquired
> into. . . . . It is necessary for the peace and security of society
> that there should be an end of litigation, and it is inequitable to
> allow those who have slept upon their rights for a period of 20
> years, after they might have demanded an accounting, and after,
> as is generally the case, the memory of transactions has faded
> and parties and witnesses passed away, to demand an
> accounting.

*Snodgrass v. Snodgrass*, 58 So. 201, 201-02 (Ala. 1912).

The concept of repose differs somewhat from the reasoning underlying statutes of

limitations.  *See Moore*, 267 F.3d at 1213-14.  Unlike a statute of limitations, the rule of

repose "*is not related to the accrual of any cause of action.*"  *Moore*, 267 F.3d at 1218

(quoting *Bradway v. Am. Nat'l Red Cross*, 992 F.2d 298, 301 (11th Cir.1993) (internal

quotation marks omitted)).  Rather, the rule is "based *solely* upon the passage of time."  *Ex*

*parte Liberty Nat'l Life Ins. Co.*, 825 So. 2d 758, 764 (Ala. 2002) (per curiam) (citation

omitted).  As such, it is a substantive rule, which "extinguishes both the remedy and the

actual action." *Id.* at 765 (internal quotation marks and citations omitted).  The rule does not account for equitable concerns arising from "the circumstances of the situation, . . . personal disabilities, . . . prejudice . . . or evidence obscured."  *Boshell*, 418 So. 2d at 91 (citations omitted).  "The only circumstance that will stay the running of the 20-year period of repose is a recognition of the claimant's right by the party defending against the claim."  *Id.* at 92 (citations omitted).

### B.  Legal Analysis: When the Rule of Repose Commences

Before the court can address defendant's argument that all of plaintiff's claims are barred by the rule of repose, it is first necessary to discuss at what point the twenty-year period commences.  The Alabama Supreme Court has held that the rule of repose begins running from the first instance of injury when plaintiff could have asserted a claim.  *Ex parte Liberty Nat. Life Ins. Co.*, 825 So. 2d at 764; *see also Am. Gen. Life Ins. Co. v. Underwood*, 886 So. 2d 807, 812 (Ala. 2004) ("The rule of repose begins running on a claim as soon as all of the essential elements of that claim coexist so that the plaintiff could validly file suit." (citing *Spain v. Brown & Williamson Tobacco Corp.*, 872 So. 2d 101, 129 (2003) (Johnstone, J., writing specially)).  This is a separate and distinct concept from accrual of a claim for purposes of a statute of limitations: "[R]epose does not depend on 'accrual,' because the concept of accrual sometimes incorporates other factors, such as notice, knowledge, or discovery."[3]  *Ex parte Liberty Nat. Life Ins. Co.*, 825 So. 2d at 765 n.2; *see, e.g.*, ALA. CODE

---

[3]The court notes, however, that Alabama statutes of limitations may often accrue at the same time the rule of repose commences.  Except in causes of action specifically defined by the

§ 6-2-3 (1975) (tolling the statute of limitations for fraud claims until claimant discovers the fraud); ALA. CODE § 6-2-8 (1975) (tolling statutes of limitations for up to twenty years if claimant is disabled by age or insanity at the time his right accrues).  Thus, the crucial task in determining if an action is time-barred is pinpointing the *first* date on which all the elements of plaintiff's claim coalesced allowing him to file suit.  *See Evans v. Walter Indus., Inc.*, 579 F. Supp. 2d 1349, 1362 (N.D. Ala. 2008).  In tort actions, this is generally the date plaintiff or plaintiff's property was actually injured.  *See id.*

### 1. Repose and Plaintiff's First Alleged Legal Injury

Defendant contends that "the *latest date* on which the first legal injury occurred is more than twenty years prior to the filing of the Amended Complaint," and thus, defendant argues, the rule of repose bars all of plaintiff's claims.  (Doc. 9-1 at 7.)  While defendant correctly states that it is "the first injury" which commences the period of repose, defendant erroneously infers the supposed precise date of said injury from plaintiff's Amended Complaint.  *Id.*  The paragraphs from the Amended Complaint, (doc. 6 ¶¶ 17-22), which defendant cites to argue repose is applicable, do not provide a precise date on which the hazardous substances were first allegedly deposited or otherwise contaminated plaintiff's property.  Specifically, defendant assumptively equates plaintiff's claim that hazardous substances "emanated . . . from each defendant's facility during the entirety of the time,"

---

legislature, (fraud, disability, asbestos exposure, medical liability, products liability, and legal services liability) the limitations period is not tolled where the claimant is merely unaware of the injury or tortious conduct.  *Travis v. Ziter*, 681 So. 2d 1348, 1354-55 (Ala. 1996).

(doc. 6 ¶ 22), they operated, (starting as far back as 1881) with the first date of alleged injury. (Doc. 9-1 at 8.)  Thus, defendant argues, plaintiff's claims are well beyond the twenty-year period of repose.  (*Id.* at 8-9.)  While plaintiff's Amended Complaint states dates on which defendant's facilities commenced and ceased operations, it does not provide when plaintiff's property was actually first harmed by the alleged deposition or migration of hazardous substances.  (*See* doc. 6 ¶¶ 8-13.)

In support of its argument that plaintiff's claims are all barred by the rule of repose, defendant cites to *Evans v. Walter Indus., Inc.*, 579 F. Supp. 2d 1349.  (Doc. 9-1 at 6-10.)  The court in *Evans* held that a motion to dismiss claims (similar to those in this case) under the rule of repose was premature because the date of first injury could not be inferred from the complaint.  *Evans*, 579 F. Supp. 2d at 1365.  A similar conclusion is warranted in this case.

The plaintiffs in *Evans* filed a putative class action in 2005 against several defendants who operated smelting and foundry plants in the vicinity of Anniston, Alabama.  *Id.* at 1351-53.  At issue was alleged damage to plaintiffs' properties based on defendants' discharge of hazardous substances into the air and groundwater.  *Id.* at 1353.  The plaintiffs were divided into four classes and all claimed property damage under theories of negligence, wantonness, trespass, and nuisance.  *Id.* at 1354.  The first three classes were organized according to plaintiffs' proximity to defendants' facilities.  *Id.*  Plaintiffs in these classes all based their claims on defendants' alleged deposition or enabling migration of substances onto plaintiffs'

properties by emissions into the air or groundwater.  *Id.*  Members of the fourth class ("Class 4"), however, rested their claims on defendants' direct, physical transportation and deposition of contaminated foundry sand on or near their properties.[4]  *Id.*  As part of their claims, plaintiffs asserted the various dates and years between which defendants operated their facilities.  *Id.* at 1354.  Every defendant had an existing plant more than twenty years before plaintiffs sued.  *Id.*  Because the Complaint alleged that "hazardous substances were placed on the plaintiffs' properties during the time [defendants] operated the facilities" defendants argued plaintiffs' claims were barred by the Alabama rule of repose.  *Id.*  (internal citations omitted).

 Addressing defendants' position that all claims were barred because suit was filed twenty years after the last emission of harmful substances,[5] the court in *Evans* stressed that repose was not triggered by the first or last emission, "but [by] the first *injury* resulting from the emissions."  *Id.* at 1365.  The court then turned to the Complaint to determine when "all of the essential elements" of plaintiffs' claims existed.  *Id.*  Regarding the plaintiffs in the first three classes who alleged torts due to emissions into the air and groundwater, the court found it could not ascertain when precisely the harmful substances first contaminated

---

 [4]It was alleged that some of the defendants sold or gave away the sand to be used as "fill material for residential and commercial properties."  *Evans*, 579 F. Supp. 2d  at 1370.

 [5]More than twenty years before plaintiffs sued, all defendants but one ceased operations at the facilities allegedly responsible for the property damage.  *Evans*, 579 F. Supp. 2d at 1364. One defendant operated a plant until 2003 but argued that repose applied because its first emissions in 1961 triggered repose.  *Id.*

plaintiffs' properties.  *Id.*  Similarly, there was insufficient evidence to determine when exactly the defendant in Class 4, whose plant operated until 2003, last physically deposited contaminated sand on plaintiffs' properties.[6]  *Id.*  Thus, even though the defendants may have commenced operations and emitted harmful substances more than twenty years before being sued, the court held these claims were not barred by the rule of repose due to the inability to pinpoint the date of first injury:

> The [third amended complaint] does not state when these emissions migrated onto their property, thus causing damage. The court, therefore, cannot determine when the Plaintiffs suffered any property damage caused by such migration.  Until the court has evidence as to when the contaminates migragrated onto plaintiffs' property, the court cannot determine whether all essential elements of Plaintiffs' claims existed more than twenty years before they filed suit. Thus, as to the claims based on migration, Defendants['] . . . mere cessation of operations does not invoke the twenty-year repose doctrine.
>
> The [third amended complaint] . . . also alleges claims based on the actual deposit of foundry sand on Class 4 Plaintiffs' property during the time [the defendants] operated the facilities.  The Class 4 claims against [one of the defendants] allege damages arising from the deposit of contaminated foundry sand onto Plaintiffs' properties between 1961 and 2003. The [third amended complaint] does not state precisely when these deposits occurred. Thus, the court cannot determine when the Plaintiffs suffered any property damage caused by such deposit.  Until the court has evidence as to when the contaminants were deposited onto plaintiffs' property, the court cannot determine whether all

_____

[6]The court found that the other Class 4 defendants that closed their plants more than twenty years before being sued could not have physically "'transported and deposited' any waste material on any Plaintiff's property *after* they ceased operations."  *Evans*, 579 F. Supp. 2d at 1366 (internal citations omitted).  Claims against these defendants were held barred by the rule of repose.  *Id.*

essential elements of plaintiffs' claims against [defendant]
existed more than twenty years before they filed suit. To the
extent Class 4 claims damages for any deposit occurring during
[defendant's] operations but more than twenty years before the filing
of suit, such claims would be barred by the rule of repose. However,
because [the Complaint] on its face does not indicate when the
deposits occurred, mere operation of [defendant's] facility prior
to 1985 does not trigger the twenty-year repose doctrine for the
entire claim.

*Id.* at 1365-66.   The court agrees with this reasoning and applies it to the instant case.

### 2.  Application of *Evans*

Plaintiff's Amended Complaint states that "Defendant deposited and deposit . . .

hazardous substances . . . on the Plaintiff's property; and/or . . . allow such substances and

materials to migrate to . . . Plaintiff's property through emissions in the air and/or flow from

surface water [or] ground water."  (Doc. 6 ¶ 17.)  Further, plaintiff claims "hazardous

substances . . . emanated and continue to emanate from each Defendant's facility during the

entirety of the time that each Defendant operated the facility."  (*Id.* 6 ¶ 22.) Such substances

have allegedly "remained on the Plaintiff's property from the time they were deposited there

to the present."  (*Id.* ¶ 20.)  The court finds no specific date where plaintiff alleges the

complained of substances were actually deposited or migrated to plaintiff's property.

Plaintiff's statement that such substances "emanated and continue to emanate . . . during the

entirety of the time" each facility operated, (doc. 6 ¶ 22), and "remain[] on the Plaintiff's

property from the time they were deposited there," (doc. 6 ¶ 20), does not establish "whether

all essential elements of [plaintiff's] claims existed more than twenty years before [she] filed suit," *Evans*, 579 F. Supp. 2d at 1365.

### a. Claims Against Defendant's Active Facilities

The court first addresses whether the rule of repose bars claims arising from alleged emissions from defendant's facilities which are still in operation.  (Doc. 6 ¶¶ 10, 13.)  Defendant contends that plaintiff's statements alleging that the emission or migration of hazardous substances commenced with the opening of the last batteries and furnace "supply a date for such first legal injury that is [no] later than 1958."  (Doc. 9-1 at 9.)  Thus, defendant asserts the claims are barred by the rule of repose because more than twenty years have passed from the date when plaintiff could have filed suit.  (Doc. 9-1 at 10.)  The court does not agree with this contention.  Following defendant's logic, the Amended Complaint is construed to state that all elements of plaintiff's claim, including injury, existed no later than the opening of defendant's last facilities in 1958, meaning that plaintiff had until sometime in 1978 to sue.  (Doc. 9-1 at 9-10.)  Although plaintiff alleges that defendant emitted and/or allowed harmful substances to migrate into groundwater and that such substances have been deposited and/or migrated onto plaintiff's property as a result of defendant's conduct, (doc. 6 ¶¶ 17-22), the Amended Complaint does not state exactly *when* deposition or migration occurred to *plaintiff's property*.  Because the Amended Complaint on its face does not indicate when the injury to the plaintiff actually happened, defendant's "mere operation of the facility prior to [1978] does not trigger the twenty-year repose

13

doctrine for the entire claim." *Evans*, 579 F. Supp. 2d at 1365-66;[7] *see also Moore*, 267 F.3d at 1218 ("[T]he rule of repose . . . time period does not begin to run when the action accrues, but rather when the relevant action occurs.").    Thus, the court finds that, at this early stage in the litigation, there is insufficient evidence to determine when plaintiff's injuries first occurred regarding defendant's facilities constructed before 1958.  Accordingly, the court cannot determine whether the rule of repose would bar these claims.

### b.  Claims Against Defendant's Inactive Facilities

Next, the court addresses defendant's argument that the rule of repose also bars any claims arising from alleged emissions from defendant's facilities, which closed more than twenty years before this action was filed.  (Doc. 9-1 at 10-11.)  Plaintiff states that operations at several of defendant's other facilities–the "City Furnaces," the "Semet Solvay coke ovens" and "an additional blast furnace"–all "ceased . . . by the end of 1980."  (Doc. 6 ¶¶ 8-10, 12.)  Defendant again cites to *Evans*, (doc 9-1 at 11), to support its repose argument but the narrow facts upon which the court in *Evans* applied the rule of repose to certain defendants does not support defendant's argument.  *Evans*, 579 F. Supp. 2d at 1366.  As noted above, the *Evans* court held that claims against two of the Class 4 defendants in that case were barred because those defendants had ceased operations more than twenty years before being sued, and thus,

---

[7]The holding in *Evans* that the Class 4 plaintiffs' claims were not barred (except for those against the one defendant who ceased operations more than twenty years before the suit) is compelling, because that class based its claims on the defendants' physical delivery and deposition of contaminated sand onto plaintiffs' properties, not deposits from air emissions or migration through groundwater.  579 F. Supp. 2d at 1365-66.

could not have physically delivered or deposited sand on plaintiffs' properties after that point. *Id.* This factual distinction was noted by the court in its reference to the "Indirect Emissions" plaintiffs and the "Direct Placement" plaintiffs: "The court presumes that Defendants use the term 'indirect' in reference to those contaminants that allegedly *traveled via air, water, or other means except being physically transported by Defendants*." *Id.* at 1354 n.3 (emphasis added). The *Evans* court held that there was not sufficient evidence to bar the class claims based on *emissions*, including the claims asserted against the defendants who *had ceased* operations more than twenty years before being sued. *Id.* at 1365.

The claims asserted in this case are identical to the "Indirect Emissions" claims at issue in *Evans*: "Defendant's conduct and practices allow such substances and materials to migrate to and/or become located on Plaintiff's property through emissions in the air and/or flow from surface water, ground water or discharge into waterways." (Doc. 6 ¶ 17.) The proposition defendant cites from *Evans,* (doc. 9-1 at 11 [citing 579 F. Supp. 2d at 1366 n.11]), is inapposite, because the court's footnote in that case specifically refers to the defendants in Class 4 ("Direct Placement") who could not have *physically* deposited or delivered contaminates after they ceased operations (more than twenty years before suit). 579 F. Supp. 2d at 1366 n.11. The emissions and alleged property damage in this case are the same as the "Indirect Emissions" claims (the first three classes) in *Evans*–that is, the claims are based on pollutants allegedly discharged into the air and groundwater. 579 F. Supp. 2d at 1354. Although some of defendant's locations ceased operations more than

twenty years before plaintiff initiated this suit, there is no indication from the face of the Amended Complaint when the complained of substances and materials "migrate[d] to and/or bec[a]me located on Plaintiff's property." (Doc. 6 ¶ 17); *see Evans*, F. Supp 2d at 1365-66. Thus, regarding defendant's facilities that have ceased operations, the court cannot determine when plaintiff's first injury occurred, and the rule of repose is not applicable at this time.

## C.  The Rule of Repose and Preemption Under CERCLA

Defendant argues that Section 309 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") does not preempt Alabama's rule of repose. (Doc. 9-1 at 11-16.)  CERCLA, as codified, in part, at 42 U.S.C. § 9658, engrafts a later commencement date over limitation periods arising out of certain state toxic tort claims "if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date." 42 U.S.C. § 9658(a)(1).[8]  This section has led to disagreement over its applicability to Alabama's common law rule of repose.  *Compare Evans*, 579 F. Supp. 2d at 1363-64 (finding Section 9658(a)(1) does not preempt Alabama's rule of repose because repose is a distinct and well-established concept, which Congress did

---

[8]Although plaintiff does not assert a claim under CERCLA in her Amended Complaint, the court may determine if Section 9658 applies here because that section expressly includes within its scope "any action brought under State law for . . . property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility." 42 U.S.C. § 9658(a)(1).  *See Evans*, 579 F. Supp. 2d at 1357 ("'the plain meaning of § 9568 . . . demonstrates that it was intended to reach claims brought under state law.'" (quoting *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1149 n.5 (9th Cir. 2002))).

not include in the specific language of CERCLA); *and German v. CSX Transp., Inc.*, 510 F. Supp. 2d 630, 633 (S.D. Ala. 2007) (same); *with Fisher v. Ciba Specialty Chems. Corp.*, 2007 WL 2995525 at *15 (S.D. Ala. Oct. 11, 2007) (finding Alabama's rule of repose is included within the ambit of the statute as a common law limitations period and thus preempted by Section 9658); *and Abrams v. Ciba Specialty Chems. Corp*, 659 F. Supp. 2d 1225, 1233-37 (S.D. Ala. 2009) (disagreeing with *Evans* and *German* and finding that under the cannons of statutory interpretation, including construing provisions in the context of the whole without rendering other provisions meaningless, the preemptive language of Section 9658 includes common law rules of repose).

As noted, the court finds that at this early stage of the litigation there is insufficient evidence to determine when the rule of repose was triggered by plaintiff's alleged injuries. Nevertheless, it is still necessary to determine whether Section 9658 preempts the rule of repose thus allowing plaintiff to proceed due to insufficient knowledge of injury, even if discovery later proves that her first injury indeed occurred more than twenty years before filing suit.

The crux of the disagreement over the preemptive scope is rooted in the language of subsection (a)(1) and (b)(2) of Section 9658:

(a) State statutes of limitations for hazardous substance cases

(1) Exception to State statutes

In the case of any action brought under State law for personal injury, or property damages, which are caused or

17

contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (*as specified in the State statute of limitations or under common law*) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.

        . . . .

(b) Definitions

As used in this section–

        . . . .

(2) Applicable limitations period

        The term "applicable limitations period" means the period specified in a *statute of limitations* during which a civil action referred to in subsection (a)(1) of this section may be brought.

42 U.S.C. § 9658(a)(1), (b)(2) (emphasis added). The "federally required commencement date" ("FRCD") is defined as "the date the plaintiff knew (or reasonably should have known) that the . . . property damages referred to in subsection (a)(1) . . . were caused or contributed to by the hazardous substance or pollutant or contaminant concerned." *Id.* (b)(4)(A). "Thus, if Alabama's 'applicable limitations period' provides a 'commencement date' earlier than when the Plaintiff[] knew or should have known of the property damage caused by the hazardous substances alleged in the complaint, the FRCD controls." *Evans*, 579 F. Supp. 2d at 1355.

The "applicable limitations period" Section 9658 purports to override appears to refer only to statutes of limitations, except that subsection (a)(1) includes the phrase "*or under common law.*" 42 U.S.C. § 9658(a)(1) (emphasis added).  Plaintiff contends that this phrase modifies "applicable limitations period" to include not only statutes of limitations codified under state law, but other limitation devices established by common law, including Alabama's rule of repose.  (Doc. 14 at 15-16.)  Defendant counters that the only limitations period under common law affected by Section 9658 is a statute of limitations, and given the sharp distinction drawn in Alabama between repose and statutes of limitation, the only logical conclusion is that CERCLA does not preempt rules of repose.  (Doc. 16 at 18-19.)  The only question the court now addresses is whether Section 9658 preempts Alabama's common law rule of repose.  Neither party argues application of the provision to the statutes of limitation codified in the Alabama Code.  The court also notes as a preliminary matter, that but for the express CERCLA  preemption provision at issue in this case, the court would strictly apply Alabama state law regarding the time period for commencement of actions.  *See Reisman v. Gen. Motors Corp.*, 845 F.2d 289, 291 (11th Cir. 1988).

As discussed *supra* in this Opinion, the Alabama Supreme Court and the Eleventh Circuit make clear that statutes of limitation and the rule of repose embody two distinct concepts.  Defendants focus on this distinction, and rely on *Evans* and a case from the Fifth Circuit, *Burlington N. & Santa Fe Ry. v. Poole Chem. Co.*, to assert that CERCLA does not apply to Alabama's rule of repose.  The FRCD, argues defendant, "modifies accrual concepts

that do not apply to the Alabama rule of repose." (Doc. 9-1 at 14.)  Defendant contends that given the substantive differences between the Alabama rule of repose and statutes of limitation, Section 9658 does not preempt the Alabama rule of repose which "operates independent of the accrual, notice, or discovery concepts applicable to statutes of limitation." (Doc. 9-1 at 15.)

The court begins its analysis with the language of the statute and the particular sections at issue:

> In construing a statute, "[t]he preeminent canon of statutory interpretation requires us to presume that [the] legislature says in a statute what it means and means in a statute what it says there."  This inquiry requires the court to "begin[ ] with the statutory text, and end[ ] there as well if the text is unambiguous."

*Am. Bankers Ins. Grp. v. United States*,  408 F.3d 1328, 1332 (11th Cir. 2005) (alteration in original) (quoting *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004)).  Reading the plain language of the statute, Section 9658(a)(1) preempts a state "commencement date" supplied by "the applicable limitations period for such action (as specified in the State statue of limitations or under common law)" if such date "is earlier than" the FRCD.  In *Abrams*, a case from the Southern District of Alabama, the court noted that the phrase "applicable limitations period" commonly includes both statutes of limitation and statutes and/or rules of repose as understood in case law in Alabama and many other jurisdictions:

> In general usage, the term "limitations period" is commonly understood by Alabama and federal courts to encompass traditional statutes of limitations as well as rules and statutes of

repose. Indeed, more than 60 years ago, the Alabama Supreme Court expressly recognized that Alabama's 20-year prescriptive restriction is a "period of limitation, . . . created by the chancery court as a rule of repose." Furthermore, even a cursory review of case law from this and other jurisdictions reveals legion authorities routinely referring to rules and statutes of repose as creating limitations periods.

*Abrams*, 659 F. Supp. 2d at 1233 (quoting *Meeks v. Meeks*, 37 So. 2d 914, 917 (1948)). The *Abrams* court goes on to quote Eleventh Circuit cases supporting this proposition as well as a number of cases from other circuit courts of appeals, district courts, and state supreme courts noting the same. *Id.* at 1233-34 n.13. The court agrees with the analysis in *Abrams*, which reasoned that the phrase "limitations period" ordinarily includes both statutes of limitation and statutes and/or common law rules of repose, notwithstanding that under the Alabama and Eleventh Circuit case law discussed *earlier* in this Opinion, the two are "legally distinct." *Id.* at 1235. Thus, the court finds that "applicable limitations period" in Section 9658(a)(1) encompasses rules of repose "under common law."[9]

Next, the court must reconcile the language in subsection (b)(2), which defines the applicable limitations period as "the period specified in a *statute of limitations* during which a civil action referred to in subsection (a)(1) of this section may be brought." 42 U.S.C. § 9658(b)(2) (emphasis added). Pointing to *Evans* and the Fifth Circuit's opinion in *Burlington*

---

[9]In so holding, the court notes the contrary finding in *Evans*, which reasoned that because the definition of "applicable limitations period" in (b)(2) includes only statutes of limitation, the phrase "or under common law" "likewise [refers to] . . . a statute of limitations period specified by common law." 579 F. Supp. 2d at 1362.

21

*Northern*, defendant argues that given Congress's choice to define the applicable limitations period as a statute of limitations "[a]ny such 'limitations period' must be consistent with the definition Congress gave to the phrase 'applicable limitations period' in § 9658(b)(2)." (Doc. 16 at 18.)  Thus, defendant concludes that Alabama's rule of repose is not preempted because it does not "have the characteristics of a limitations period contained in a statute of limitations."  (*Id.*)  However, as noted in *Abrams*, "case law . . . routinely refer[s] to rules and statutes of repose as creating limitations periods."  659 F. Supp. 2d at 1233.

Although defendant claims the language of subsection (b)(2) is clear and unambiguous as applied to subsection (a)(1), the court disagrees based on the above discussion, and thus turns to cannons of statutory construction and legislative history to harmonize the conflict between the apparent definition of applicable limitations period as a statute of limitations and the phrase "or under common law."  "When the meaning of statutory language cannot be divined from the face of the statute, we turn first to intrinsic aids to interpretation."  *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1204 (11th Cir. 2007).  First, the court will consider the conflicting phrases in the larger context of the statute: "Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis."  *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006). Subsection (a)(1) begins by broadly stating the types of actions Section 9658 is meant to affect–"any action brought under State law for personal injury, or property damages, which

22

are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility." 42 U.S.C. § 9658(a)(1). The FRCD is then substituted "if the applicable limitations period for such action . . . provides a commencement date which is earlier." *Id.* Similar to the definition in (b)(2), "commencement date"[10] is defined as "the date specified in a statute of limitations as the beginning of the applicable limitations period." *Id.* § (b)(3). The court turns to legislative history and case law discussing that history to flesh out the provision's purpose.

Regardless of the ambiguity rooted in the contested provisions and whether they include statutes and/or rules of repose, Section 9658 clearly advances the broader purpose of CERCLA as characterized by the Eleventh Circuit: "CERCLA is a broad, remedial statute animated by a sweeping purpose to ensure that those responsible for contaminating American soil shoulder the costs of undoing that environmental damage." *Monarch Tile, Inc. v. City of Florence*, 212 F.3d 1219, 1221 (11th Cir. 2000) (citations omitted). But beyond the

---

[10]The concept of a commencement date is also used in conjunction with rules and statutes of repose. *See, e.g.*, *Ivy v. Ford Motor Co.*, 646 F.3d 769, 773 (11th Cir. 2011) ("Georgia's statute of repose states, 'No action shall be commenced pursuant to this subsection with respect to an injury after ten years from the date of the first sale for use or consumption of the personal property causing or otherwise bringing about the injury.'" (quoting GA. CODE ANN. § 51–1–11(b)(2))); *Dalfrey v. Boss Hoss Cycles, Inc.*, 2011 WL 4931166, at *2 (5th Cir. 2011) (per curiam) ("Texas's products liability statute of repose . . . requires a claimant [to] commence a products liability action against a manufacturer or seller of a product before the end of 15 years after the date of the sale of the product by the defendant." (alteration in original) (internal quotations omitted)); *Owens-Illinois, Inc. v. Wells*, 50 So. 3d 413, 416 (Ala. 2010) (per curiam) ("the rule of repose bars actions that have not been commenced within 20 years from the time they could have been commenced." (internal quotation marks and citation omitted)).

remedial purpose of the statute and the mere extension of time to bring an action for

environmental damage, Section 9658 has been recognized as allowing plaintiffs to seek relief

from latent injuries that were unrecognizable for extended periods of time.  Indeed, one of

the cases relied on by defendant, *Burlington Northern*, examines the legislative history

underlying Section 9658 and states this very proposition:

> Congress added § 9658 as part of the 1986 CERCLA
> amendments to respond to a report by a congressional study
> group that determined that many state systems were inadequate
> to deal with the delayed discovery of the effect of a release of a
> toxic substance. Congress was concerned that in the case of a
> long-latency disease like cancer, a plaintiff could be barred from
> bringing his lawsuit if the state statute of limitations ran from
> the time of the first injury rather than from the time when the
> plaintiff discovered that his injury was caused by the hazardous
> substance.

419 F.3d at 364 (citing H.R. REP. No. 99-962, at 74 (1986), *reprinted in* 1986 U.S.C.C.A.N.

3276, 3354) [hereinafter HOUSE CONF. REP. 99-962].   However, after citing the House

Conference Report and discussing the underlying purpose of Section 9658, the *Burlington*

court seemingly treated the legislative history as an afterthought due to the distinct facts of

the case: "this case does not involve the delayed discovery for which § 9658 was intended

to address. The case does not implicate a long-latency disease or involve a situation where

the time for filing a claim expired before the plaintiff learned that a hazardous substance

caused his injury." *Id.* at 364-65.  Two particular facts at issue in *Burlington* make the case

distinguishable.  First, the law at issue in that case was a Texas statute of repose codified in

the state's statutory scheme. *Id.* at 358.  Focusing on the plain language of Section 9658, the

court found that since the statute made no reference to a *statute* of repose, but only state statues of limitation or provisions under common law, the Texas statute was held not preempted. *Id.* at 364. Second, the statute of repose at issue in *Burlington* barred products liability claims against manufacturers brought more than fifteen years after the product was purchased. *Id.* at 358-59. The plaintiff in *Burlington* was aware of the accident allegedly caused by the defective product as soon as it happened, which was still within the fifteen-year period of repose. *Id.*

The House Conference Report quoted in *Burlington*, while helpful, is not the most significant piece of legislative history, and thus the court now turns to the Committee Print outlining the amendments to CERCLA, which were adopted, in part, as Section 9658. *See Lowery*, 483 F.3d at 1205-06 (11th Cir. 2007) ("The Supreme Court 'has repeatedly stated that the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill, which represen[t] the considered and collective understanding of those [Members of Congress] involved in drafting and studying proposed legislation.'" (alteration in original) (quoting *Garcia v. United States*, 469 U.S. 70, 76 (1984))). In 1982, the so-called "301(e) Study Group" made a report of its recommendations to amend CERCLA concerning a claimant's ability to timely discover latent injuries typically resulting from exposure to harmful substances. SUPERFUND SECTION 301(E) STUDY GROUP, 97TH CONG., INJURIES AND DAMAGES FROM HAZARDOUS WASTES–ANALYSIS AND IMPROVEMENT OF LEGAL REMEDIES, at 255-56 (Comm. Print 1982) [hereinafter SECTION 301(e) REPORT]. Under a section titled

"Statutes of Limitations" the report addresses the problem of state limitation periods that

expire before discovery of the injury:

> Since many of the hazardous wastes . . . are substances with delayed impact . . . the latency period for appearance of injury . . . is likely to be extended for thirty years or more.  In states that have not clearly adopted the discovery rule . . . the cause of action will usually be time barred when the plaintiff discovers his hurt.  The Study Group recommends that all states that have not already done so, clearly adopt the rule that an action accrues when the plaintiff discovers or should have discovered the injury or disease and its cause.  *The Recommendation is intended also to cover the repeal of the statutes of repose which, in a number of states have the same affects as some statutes of limitation in barring plaintiff's claim before he knows he has one.*

*Id.*  The case currently before the court illustrates the precise issue Congress and the Study

Group intended to remedy with the 301(e) Report recommendation: if plaintiff's property

was first contaminated more than twenty years before she filed this action, her claim would

have extinguished by operation of the rule of repose before she was even aware of the injury.

 Although the report speaks of statutes of limitation and accrual, the Study Group also clearly

included the concept of repose within the problems resulting from delayed discovery.

Tellingly, the 1986 House Conference Report states that the amendments resulting in Section

9658 were meant to "address[] the problem identified in the 301(e) study."  HOUSE CONF.

REP. 99-962 at 74; *See also McDonald v. Sun Oil Co.*, 548 F.3d 774, 782-83 (9th Cir. 2008)

(discussing the legislative history behind the CERCLA amendments, including the

recommendations of the 301(e) Study Group and finding that "Congress's primary concern

in enacting § 309 was to adopt the discovery rule in situations where a plaintiff may lose a

cause of action before becoming aware of it . . . [, which] can be caused by either statutes of limitation or statutes of repose, and is probably most likely to occur where statutes of repose operate.)

The court reads Section 9658 "in the context of the purpose it was intended to serve." *APA Excelsior III L.P. v. Premiere Techs., Inc.*, 476 F.3d 1261, 1268 (11th Cir. 2007) (internal quotation marks and citations omitted).  The legislative history indicates that Congress amended CERCLA to further the law's broad remedial purposes by trying "to avoid bouncing people like . . . plaintiff[] out of court simply because [she] failed to discover the environmental contamination on [her] propert[y] in time."  *Abrams*, 659 F. Supp. 2d at 1239.

This court follows the conclusion of the court in *Abrams* that "applicable limitations periods include both periods specified by state legislatures via statute and periods specified as a matter of state common law, as Alabama has done with its rule of repose." *Id*. at 1237. This finding resolves the tension between subsections (a)(1) and (b)(2) and gives meaning to the phrase "or under common law," rather than rendering it "mere surplusage." *See id.* at 1236-37 (quoting *Tug Allie-B, Inc. v. United States*, 273 F.3d 936, 944 (11th Cir. 2001)). Moreover,  the court is not required to interpret a statute "'in such a narrow fashion as to defeat what we conceive to be its obvious and dominating general purpose.'" *United States v. DuBose,* 598 F.3d 726, 731 (11th Cir. 2010) (per curiam) (citing *Miller v. Amusement Enters., Inc.*, 394 F.2d 342, 350 (5th Cir. 1968)).  Thus, the court agrees with the holding in *Abrams* that Section 9658 includes the limitations period in Alabama's common law rule of

repose.  Where applicable, the court will hereafter use the federally required commencement date to determine whether or not plaintiff's claims were timely.  However, as discussed above, there is insufficient evidence on the face of the Amended Complaint to apprise the court of the date on which plaintiff was first injured.   There is also insufficient evidence as to when plaintiff knew (or reasonably should have known) that the property damages referred to in the Complaint were caused or contributed to by the hazardous substances concerned.

**II.  Plaintiff's Class Action Allegations**

Defendant also moves to dismiss plaintiff's putative class allegations for failure to plead an ascertainable class under FED. R. CIV. P. 23.  (Doc. 9 at 1; *see* doc. 9-1 at 16-26.) The court agrees, but will grant plaintiff leave to amend her class allegation.

It is well-settled that a plaintiff bears the burden of establishing all prerequisites under the Federal Rules of Civil Procedure before a class action is proper in the district court. *Gilchrist v. Bolger*, 733 F.2d 1551, 1556 (11th Cir. 1984); *see also Walker v. Jim Dandy Co.*, 747 F.2d 1360, 1363 (11th Cir. 1984) ("For all practical purposes, [the Rule 23 prerequisites] . . . effectively 'limit the class claims to those fairly encompassed by the named plaintiffs' claims.'" (quoting *Gen. Tel. Co. v. Equal Emp't Opportunity Comm'n*, 446 U.S. 318, 330 (1980))).  The foremost of these threshold requirements is that the plaintiff plead an ascertainable class: "Although not explicit in Rule 23 . . . courts have universally recognized that the first essential ingredient to class treatment is the **ascertainability of the class.**" *Grimes v. Rave Motion Pictures Birmingham, L.L.C.*, 264 F.R.D. 659, 663 (N.D. Ala. 2010)

(citations omitted); *see also DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (per curiam) ("It is elementary that in order to maintain a class action, the class . . . must be adequately defined and clearly ascertainable." (citations omitted)).  Stated differently, a proposed class may be ascertainable where it is neither "amorphous" nor "imprecise." JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 23.21 (3d ed. 2008).  Thus, before the court addresses the explicit Rule 23 requirements of numerosity, commonality, typicality, and adequacy to represent the class, the class allegations in the Amended Complaint must at least set the parameters of the proposed class; if not, the court may dismiss the class allegations on motion by the defendant.  *See Earnest v. Gen. Motors Corp.*, 923 F. Supp. 1469, 1473-74 (N.D. Ala. 1996); *see also John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) ("Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings." (footnote omitted)).

Plaintiff's Amended Complaint generally states that her claims are "on behalf of herself and . . . a class of persons similarly situated."  (Doc. 6 ¶ 4.)  Further, plaintiff's class allegation seeks certification based on the following class definition:

> **Any and all property owners who have been damaged by the emission of waste and hazardous materials, including but not limited to arsenic and BaP, by Defendant's coke producing activities from the Jefferson County, Alabama, facilities for the time period of March 2, 1995 to the present.**

(*Id.* ¶ 23.)  The court finds this definition too imprecise to satisfy the threshold requirement that a class be ascertainable on its face, and as the defendant notes, the class is so open-ended

that it could potentially include *any* property owner *anywhere* depending on how far the alleged emissions and groundwater migrations traveled.  (Doc. 9-1 at 22-23.)

The plaintiff's alleged class fails to cross the initial threshold of "definiteness" and therefore dismissal based on defendant's Motion is appropriate.  *See Earnest*, 923 F. Supp. at 1473.  In *Earnest v. Gen. Motors Corp.*, the court granted the defendants' motion to dismiss plaintiffs' class allegations because the class definition was amorphous and indefinite. *Id.* at 1473-74.  The issue in *Earnest* was the defendants' alleged defective design and installation of engines and engine control modules in some of its cars.  *Id.* at 1470-71. Plaintiffs purported to represent a class of "any persons in the State of Alabama who own or lease, or have in the past owned or leased vehicles equipped with [defendants' engines or control modules] . . . such as those in the said vehicles of the named Plaintiffs." *Id.* at 1473. Among other infirmities found in the definition, the court held that the open-ended language of the proposed class prevented the court from determining from the face of the complaint what type of engines or modules were included in the class and whether class members were actually located in Alabama, or elsewhere.  *Id.* at 1473-74.  Other courts have reached similar outcomes dismissing class claims for failure to plead an ascertainable class in the complaint or in a motion for class certification.  *Benefield v. Int'l Paper Co.*, 270 F.R.D. 640, 642-45 (M.D. Ala. 2010) (holding class defined as those owning property within a two-mile radius of the defendant not adequately defined, because forming the proposed class required factual determinations by the court, including whether putative members' properties were "contaminated" by the defendant and the extent of property damage arising from the alleged contamination); *John v. Nat'l Sec. Fire &*

30

*Cas. Co.*, 06-1407, 2006 WL 3228409, at *4 (W.D. La. Nov. 3, 2006) *aff'd*, 501 F.3d 443 (5th Cir. 2007) (granting the defendant's motion to dismiss because the class was not clearly ascertainable, since the proposed class would require too many factual inquiries into each putative class member's claims).

Plaintiff's class definition is not ascertainable as pled in the Amended Complaint. Like the proposed class in *Earnest*, there are multiple factual determinations the court must make before it can even reach the explicit Rule 23 class requirements. *See Earnest*, 923 F. Supp. at 1473-74. Under the proposed definition, it must be determined whether property was damaged, by any number of substances or hazardous materials not delineated by plaintiff, and whether or not such damage was caused by the activities at defendant's facilities. Moreover, the class definition includes "any and all property owners" who sustained such damage, opening the inquiry to any property, without geographic bounds, where the alleged hazardous emissions could have traveled by air or migrated through groundwater. (Doc. 6 ¶ 23.) Such "individualized fact-finding . . . necessary in order to identify class members . . . is inappropriate" and thus dismissal of plaintiff's class claims is proper as the proposed class is not ascertainable. *Adair v. Johnston*, 221 F.R.D. 573, 578 (M.D. Ala. 2004). However, the court will grant plaintiff leave to amend her class allegation. Because the court grants defendant's Motion as to dismissal of plaintiff's class claims based on plaintiff's failure to plead an ascertainable class, the court does not address defendant's argument addressing whether plaintiff satisfies the four explicit Rule 23 requirements. (Doc. 9-1 at 25-26.)

31

### III.  Adequacy of Plaintiff's Claims

Defendant's Motion also challenges plaintiff's Amended Complaint on the ground that it "fails to adequately plead claims for negligence, nuisance, trespass, wantonness, and injunctive relief."  (Doc. 9 at 1-2.)  The court addresses the sufficiency of each of these claims separately.

### A.  Trespass

#### 1.  Proof That Plaintiff Did Not Consent To Entry

Plaintiff alleges that defendant's conduct led to the disposal of substances on her land or allowed such substances to migrate or otherwise become located thereon through emissions into the air and/or through discharge into waterways.  (Doc. 6 ¶ 42.)  Plaintiff further alleges that such conduct was intentional, resulting in an invasion of and interference with plaintiff's property that was foreseeable, thereby causing damage to the property.  (*Id.* ¶¶ 43-46.)

Defendant argues that plaintiff fails to state a trespass claim because she does not plead that the alleged deposition and/or migration of substances onto her property was without her consent.  (Doc. 9-1 at 28.)  Under Alabama common law, trespass is defined as "'[a]ny entry on the land of another without express or implied authority.'"  *Cent. Parking Sys. of Ala., Inc. v. Steen*, 707 So. 2d 226, 228 (Ala. 1997) (quoting *Foust v. Kinney*, 80 So. 474, 475 (Ala. 1918)).  Consent may be found notwithstanding plaintiff's granting it under mistake of fact or fraudulent inducement. *Martin v. Fid. & Cas. Co. of N.Y.*, 421 So. 2d 109,

111 (Ala. 1982).  Further, a plaintiff's implied consent to enter her land bars a trespass claim.  *See Steen*, 707 So. 2d at 228.

Defendant argues that plaintiff should have explicitly alleged that the migration and/or deposition of substances on her property was without her consent, and that the absence of such allegations mandates the claim be dismissed.  (Doc. 9-1 at 30.)  In support of this argument, defendant again relies on *Evans*, where the court dismissed one of the trespass claims because there were no "factual allegations to support the assertion that the placement of foundry sand on [plaintiffs'] properties was without their consent."  579 F. Supp. 2d at 1370.  However, defendant ignores the crucial factual distinction between the trespass claim dismissed in *Evans* and plaintiff's claim in this case.  The proposition from *Evans* to which defendant cites addressed the trespass claim of the "Class 4 Plaintiffs" in that case, who alleged that some of the defendants "engaged in offering and disposing of their spent foundry sand and that Defendants simply gave it away and sold it as fill material."  *Id.* (internal quotations and alterations omitted).  The court thus reasonably inferred that the entry onto the land was consented to based on factual allegations that the defendants physically deposited the contaminated sand on plaintiffs' properties after some form of offer to sell or give it away.  *Id.*[11]  The *Evans* court noted that no named plaintiff in Class 4 alleged injury due to trespass by *migration* of harmful substances on their properties.  *Id.*  Tellingly, the

_____

[11]The *Evans* court qualified its statement by noting that even without drawing such an inference, the complaint did not specifically allege that the placing of sand on the Class 4 plaintiffs' properties was without their consent, an essential element of a trespass claim.  579 F. Supp. 2d at 1370.

33

*Evans* court *denied* the motion to dismiss the trespass claims of the other three classes of plaintiffs who alleged claims identical to the plaintiff in this case (e.g. placement of substances through emissions and/or groundwater migration) "because the factual allegations, taken as true, and all reasonable inferences, drawn in [their] . . . favor . . . [were] sufficient to support a claim of trespass." *Id.* at 1376.

While the issue of whether plaintiff consented to the alleged entry is a necessary element of pleading her trespass claim, the court's inquiry on this Motion to Dismiss "accept[s] as true the facts stated in the complaint and all reasonable inferences therefrom." *Jackson v. Okaloosa Cnty., Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994) (citation omitted). And the court is required to "draw all reasonable inferences . . . in favor of the Plaintiff[]." *Long v. Slaton*, 508 F.3d 576, 579 (11th Cir. 2007) (citation omitted). The trespass claim here is based on the alleged disposal of substances on plaintiff's property by groundwater migration and/or emissions in the air. (Doc. 6 ¶ 42.) Unlike the Class 4 claimants in *Evans*, plaintiff does not plead that she arranged with defendant to have any substances delivered and placed on her property. Indeed there is no indication in the Amended Complaint that plaintiff ever consented to any placement of substances on her property or was even aware of the emissions or migrations from defendant's facilities. Construing the factual allegations as true, and drawing all reasonable inferences in favor of plaintiff, the court finds, that plaintiff's trespass claim is sufficient. *See Evans*, 579 F. Supp. 2d at 1369.

### 2. Substantial Harm

Defendant also challenges plaintiff's trespass claim on the ground that she fails to adequately plead the requirement of substantial harm. (Doc. 9-1 at 30-32.) In Alabama, a trespass that is based on "indirect" entry onto the claimant's land, must include some degree of "substantial harm":

> [A]n indirect trespass occurs where the trespasser releases a "foreign polluting matter" beyond the boundaries of his property, knowing to a "substantial certainty" that it will invade the property. In comparing direct trespass and indirect trespass, [the Alabama Supreme Court] . . . stated that a plaintiff need not show actual damage to prove *direct* trespass. However, the plaintiff must prove four elements to show an *indirect* trespass: "1) an invasion affecting an interest in the exclusive possession of his property; 2) an intentional doing of the act which results in the invasion; 3) reasonable foreseeability that the act done could result in an invasion of plaintiff's possessory interest; and 4) substantial damage[ ] to the res" . . . . In order to prove an indirect trespass, the plaintiffs here must show that "some substance has entered upon the land itself, affecting its nature and character, and causing *substantial actual* damage to the res."

*Russell Corp. v. Sullivan*, 790 So. 2d 940, 946-47 (Ala. 2001) (footnote omitted) (quoting *Borland v. Sanders Lead Co.*, 369 So. 2d 523, 529-30 (Ala. 1979); *Rushing v. Hooper-McDonald, Inc.*, 300 So. 2d 94 (Ala. 1974)). It has been noted that there is no exact definition in Alabama of what constitutes substantial harm under this standard, but the term includes claims similar to those plead by plaintiff:

> Unfortunately, Alabama courts do not appear to have fleshed out the precise scope and dimensions of this term, or to have delineated the minimum threshold of property damage needed to comport with the substantiality element. To be sure, the

35

> requisite substantial damage has been found in circumstances
> where sewage floods a plaintiff's house, where foreign matter
> washes onto a plaintiff's property, and the like.

*Abrams*, 663 F. Supp. 2d 1243, 1253 (S.D. Ala. 2009) (citing *W.T. Ratliff Co. v. Henley*, 405

So. 2d 141, 145 (Ala. 1981); *Snyder v. Howard Plumbing & Heating Co.*, 792 So. 2d 425,

429 (Ala. Civ. App. 2000)).

It is not necessary to inquire into the degree or merits of plaintiff's alleged substantial

harm, because at the motion to dismiss stage, the court "accept[s] as true the facts stated in

the complaint and all reasonable inferences therefrom." *Jackson*, 21 F.3d at 1534 (citation

omitted). The court finds that plaintiff has plead sufficient facts to satisfy the minimum

threshold of "facial plausibility . . . that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing

*Twombly*, 550 U.S. at 556).  Plaintiff alleges that as a result of defendant's operations,

"Defendant deposited and deposit various waste substances, including but not limited to

arsenic, BaP, and other hazardous substances and waste materials, on the Plaintiff's

property." (Doc. 6 ¶ 17.)  Further, plaintiff states that her property has been damaged by such

substances from defendant's facilities in the form of "lessened value" as well as

contamination necessitating "remediation to remove the hazardous substances referenced."

(*Id.* ¶ 21.)   In conjunction with these factual allegations, plaintiff pleads, among the other

requirements for trespass, that her property "suffered and continues to suffer substantial

damage, which has affected the nature and character of the property."  (*Id.* ¶ 46.)

Plaintiff has stated a sufficient claim upon which relief may be granted.  Construing the factual allegations as true, and drawing all reasonable inferences in favor of plaintiff, the court finds the substantial harm element of the trespass claim is sufficiently plead. Defendant's Motion will be denied as to plaintiff's trespass claim.

### B.  Nuisance

Defendant challenges plaintiff's Amended Complaint on the ground that she fails to provide sufficient factual allegations to support her claim for nuisance, and specifically, that plaintiff does not adequately plead that defendant's conduct and the harm caused thereby was enough to affect a reasonable person.  (Doc. 9-1 at 32.)  Nuisance is codified by statute in Alabama:

> A "nuisance" is anything that works hurt, inconvenience or damage to another. The fact that the act done may otherwise be lawful does not keep it from being a nuisance. The inconvenience complained of must not be fanciful or such as would affect only one of a fastidious taste, but it should be such as would affect an ordinary reasonable man.

ALA. CODE § 6-5-120 (1975).  Based on the alleged harm to plaintiff's property, as discussed above in conjunction with her trespass claim, the court declines to inquire further into the factual merits of plaintiff's allegations at this stage.  Construing the factual allegations as true, and drawing all reasonable inferences in favor of plaintiff, the court finds that plaintiff has plead sufficient facts to satisfy all the requisite elements to maintain her nuisance claim. Defendant's Motion will be denied as to plaintiff's nuisance claim.

## C. Wantonness

Defendant challenges plaintiff's Amended Complaint on the ground that she fails to provide sufficient factual allegations to support her claim for wantonness, and specifically, that plaintiff does not adequately plead that defendant had actual knowledge of the complained-of injury.  (Doc. 9-1 at 32-33.)  Wantonness is codified by statute in Alabama as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others."  ALA. CODE § 6-11-20 (1975); *see also Hobart Corp. v. Scoggins*, 776 So. 2d 56, 58 (Ala. 2000) (per curiam) ("Wantonness involves the '*conscious* doing of some act or the omission of some duty, while *knowing* of the existing conditions and *being conscious* that, from doing or omitting to do an act, injury will likely or probably result.'" (quoting *Alfa Mut. Ins. Co. v. Roush*, 723 So. 2d 1250, 1256 (Ala.1998))).  Defendant essentially asks the court to review the factual merits of plaintiff's claim and cites to case law reviewing a judgment as a matter of law based on facts similar to those here.  (Doc. 9-1 at 33 [citing *Chestang v. IPSCO Steel (Ala.), Inc.*, 50 So. 3d 418, 433-36 (Ala. 2010)].)  Such an analysis is not warranted at this time as plaintiff is not yet opposing summary judgment or conducting a trial on the merits.  "When considering a motion to dismiss, . . . 'the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman*, 225 F.3d at 1231 (quoting *Long Cnty.*, 999 F.2d at 1510).  Based on the alleged harm to plaintiff's property, as discussed above in conjunction with her trespass claim, the court declines to inquire further into the factual merits of plaintiff's allegations at this stage.  Construing the factual allegations as

38

true, and drawing all reasonable inferences in favor of plaintiff, the court finds that plaintiff has pled sufficient facts to satisfy all the requisite elements to maintain her wantonness claim. Defendant's Motion will be denied as to plaintiff's wantonness claim.

### D. Negligence

Defendant challenges plaintiff's Amended Complaint on the ground that she fails to provide sufficient factual allegations to support her claim for negligence. (Doc. 9-1 at 33-34.) Specifically, defendant argues that plaintiff does not adequately plead that she was a foreseeable plaintiff, that defendant breached a duty of care, or identify the applicable standard of care. (*Id.*) In Alabama, "[t]o establish negligence, the plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury." *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994) (citation omitted).

As discussed above, the court does not inquire into the merits of plaintiff's allegations at this stage. Plaintiff's Amended Complaint includes factual allegations outlining defendant's operations in the Birmingham area. (Doc. 6 ¶¶ 7-22.) The Amended Complaint also asserts that defendant owes plaintiff a duty "to exercise due and reasonable care in the manufacturing, storage, disposal, and other operations to safely . . . dispose of various waste substances. (*Id.* 6 ¶ 25). A breach of said duty is adequately pled as shown by the alleged deposition or migration of hazardous substances onto plaintiff's property and the resulting damage thereto. (*See id.* ¶¶ 17-22.) Finally, as a resident of North Birmingham, (doc. 6 ¶ 5), plaintiff lives in the vicinity of defendant's facilities located in the same area, (doc. 6 ¶¶ 7-

16), and thus, it is foreseeable that the complained of substances might harm plaintiff's property. Construing the factual allegations as true and drawing all reasonable inferences in favor of plaintiff, the court finds that plaintiff has sufficiently pled a claim for negligence. Defendant's Motion will be denied as to plaintiff's negligence claim.

### E. Injunctive Relief

Defendant challenges plaintiff's claim for injunctive relief on the ground that she fails to articulate a basis for why injunctive relief is warranted. (Doc. 9-1 at 35.)  In petitioning the court for permanent injunctive relief, "the plaintiff must show actual success on the merits" and "must demonstrate the presence of two elements: continuing irreparable injury if the injunction does not issue, and the lack of an adequate remedy at law." *Siegel v. LePore*, 234 F.3d 1163, 1213 (11th Cir. 2000) (per curiam) (internal quotation marks and citations omitted).  Count Five of the Amended Complaint appears to request that the court permanently enjoin defendant from emitting hazardous substances from its facilities and also requests remediation of any contaminates on her property, including removal of contaminated soil. (Doc. 6 ¶ 48.)  The Amended Complaint, however, lacks any allegations that the harm complained of is irreparable or that plaintiff lacks an adequate remedy at law, and thus fails to state a claim.[12]  Defendant's Motion will be granted as to plaintiff's claim for injunctive relief.

---

[12]Dismissal of Count Five does not in any way affect plaintiff's prayer for any equitable relief which the court may deem appropriate after adjudication on the merits.

## CONCLUSION

For the reasons stated above and as directed in the Order entered contemporaneously herewith, the court now holds:

Defendant's Motion to Dismiss on the basis of Alabama's rule of repose will be denied, because at this time, the court has insufficient evidence to determine exactly when plaintiff's first injury occurred.  However, the court finds that Section 309 of CERCLA applies to Alabama's rule of repose.

The defendant's Motion to Dismiss on the basis of plaintiff's failure to sufficiently plead an ascertainable class will be granted.  However, plaintiff will be given leave to amend her class allegation.

The defendant's Motion to Dismiss on the basis of plaintiff's failure to sufficiently plead valid state law claims of trespass, nuisance, wantonness, and negligence will be denied.  However, defendant's Motion Dismiss regarding plaintiff's claim for injunctive relief will be granted because plaintiff does not plead the necessary elements for such relief.

**DONE**, this the 28th day of September, 2012.

SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE