## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **LOUISE MOORE,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | |
| | } | **CASE NO. 2:11-cv-1391-SLB** |
| **WALTER COKE, INC.,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

This case is before the court on defendant, Walter Coke, Inc.'s Motion for Partial

Dismissal of Plaintiff's Second Amended Class Action Complaint, (doc. 22), and plaintiff,

Louise Moore's Motion for Leave to Amend Complaint, (doc. 26).[1]  Upon consideration of

the motions, the supporting and opposing memoranda, arguments of counsel and the relevant

law, the court finds, for the reasons stated below, that defendant's Motion is due to be denied

and plaintiff's Motion is due to be granted.

## STANDARD OF REVIEW

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be

granted.  To survive a 12(b)(6) motion, the complaint "does not need detailed factual

allegations;" however, the "plaintiff's obligation to provide the 'grounds' of his

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each
document as it is filed in the court's record.

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).[2] "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

"When considering a motion to dismiss, all facts set forth in plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (per curiam) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). All "reasonable inferences" are drawn in favor of the plaintiff. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)).

---

[2]In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court abrogated the oft-cited standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," which was set forth in *Conley v. Gibson. See Twombly,* 550 U.S. at 561 (quoting *Conley,* 355 U.S. 41, 45-46 (1957)). The Supreme Court stated that the "no set of facts" standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. The "decision in *Twombly* expounded the pleading standard for 'all civil actions.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1953 (2009).

## FACTUAL BACKGROUND

Plaintiff is a resident citizen of Jefferson County, Alabama, and defendant is a Delaware Corporation that operates facilities in Jefferson County, Alabama, where it produces "furnace and foundry coke and slag fiber." (doc. 20 ¶ 7).  Plaintiff alleges that as a result of its manufacturing operations, defendant has deposited "various waste substances"[3] onto her property and has caused these substances to migrate onto her land through air emissions, surface water, and discharge into waterways. (*Id.* ¶¶ 10-12.)  She claims that as a result, her property has been contaminated and its value has been reduced.  (*Id.* ¶ 14.)  Therefore, she requests, on behalf of herself and the class she seeks to represent, (*id.* ¶ 4), damages "for the time period from March 2, 1995 to the present," (*id.* ¶ 15).  She further alleges that remediation is needed "to remove the hazardous substances referenced herein," (*id.* ¶ 14), because they "remain on [her] property and continue to cause damage," (*id.* ¶ 15).

---

[3] In her first Amended Complaint, (doc. 6), plaintiff did not specify the exact nature of these substances, other than alleging that they "includ[ed] but [were] not limited to arsenic, BaP, and other hazardous substances and waste materials," (*id.* ¶ 17).  In her Second Amended Complaint, plaintiff now alleges that these substances specifically include "carcinogenic polycyclic aromatic hydrocarbons, arsenic, benoz(a)anthracene, benzo(a)pyrene (BaP), benzo(b)fluoranthene, benzo(k)fluoranthene, dibenzo(a,h)anthracene, chrysene, and indeno(1,2,3-cd)pyrene." (Doc. 20 ¶ 10.)  These specific substances were also added to the proposed class definition in response to the court's concerns that "it must be determined whether property was damaged, by any number of substances or hazardous materials not delineated by plaintiff . . . ."  (Doc. 18 at 31.)

3

**Procedural Background**

This is the second Motion to Dismiss in this case. Originally, on June 6, 2011, plaintiff, on behalf of herself and a proposed class, filed her first Amended Class Action Complaint, asserting the same state law claims of negligence, wantonness, nuisance, trespass, and a claim for injunctive relief. (*See* doc. 6 ¶¶ 24-48.) Defendant subsequently moved to dismiss the Complaint for (1) untimeliness under Alabama's twenty-year common law rule of repose; (2) failure to state a claim under Federal Rule of Civil Procedure 23; and (3) failure to meet the pleading standards of Federal Rule of Civil Procedure 8(a)(2). (Doc. 9 at 1-2.) This court granted defendant's motion on the grounds that plaintiff failed to sufficiently plead an ascertainable class in accordance with the requirements of Rule 23. (*See* doc. 18 at 2.) However, the court explicitly gave plaintiff leave to amend her class allegation. (*Id.*) Notably, the court did "not address defendant's argument addressing whether plaintiff satisfie[d] the four explicit Rule 23 requirements." (Doc. 18 at 31.)[4]

The court also dismissed plaintiff's injunctive relief count because it failed to state a claim on which relief could be granted (specifically, the court said that plaintiff had not pled the elements of injunctive relief—namely, inadequate remedy at law and irreparable harm). (*Id.* at 40.) The Order entered contemporaneously with the Memorandum Opinion stated that "[d]efendant's Motion to Dismiss on the basis of plaintiff's failure to sufficiently plead an

---

[4]    This is important because the argument that plaintiff has not explicitly pled the four Rule 23(a) requirements is again made by defendant on the Motion for Partial Dismissal that is now before the court.

ascertainable class is **GRANTED**," and that "[d]efendant's Motion to Dismiss regarding plaintiff's claim for injunctive relief is **GRANTED**.  Plaintiff's claim for injunctive relief is **DISMISSED**."  (Doc. 19 at 1-2.)  It further stated that "[p]laintiff is granted leave to amend her Complaint and is **DIRECTED** to file a complete and fully integrated complaint . . . ."  (Doc. 19 at 2.)  This has apparently created some confusion as to whether the court allowed plaintiff to replead her injunctive relief claim.  In accordance with the court's instructions, plaintiff filed her Second Amended Complaint on October 29, 2012, again asserting the same state law claims of negligence, wantonness, nuisance, trespass, and a claim for injunctive relief.  (Doc. 20 ¶ 1.)

**Defendant's Motion for Partial Dismissal**

Defendant has filed a Motion for Partial Dismissal of Plaintiff's Second Amended Class Action Complaint, (doc. 22), and brief in support, (doc. 22-1), alleging that (1) plaintiff has again failed to plead an ascertainable class; (2) plaintiff has failed to plead a class that meets the substantive requirements of Federal Rule of Civil Procedure 23(b) (focusing on predominance); (3) plaintiff has again failed to allege any of the Rule 23(a) requirements; and (4) plaintiff's injunctive relief claim should be dismissed because the court never granted her leave to replead that particular count, and because she only added a formulaic recitation of the elements to the claim.  (Doc. 22 at 1-2; doc. 22-1 at 5, 12, 19, 20.)  Plaintiff conceded in her Opposition, (doc. 25 at 20), that she did not ask the court for leave to replead her claim for injunctive relief, and simultaneously filed a Motion for Leave to Amend Complaint, (doc.

5

26), regarding the injunctive relief claim.  Defendant has filed a Response in Opposition to the Motion for Leave to Amend.  (Doc. 27.)

## DISCUSSION

### I.     Plaintiff's Class Action Allegations

Defendant moves to dismiss plaintiff's putative class allegations for three reasons: plaintiff again failed to plead an ascertainable class (doc. 22-1 at 5); plaintiff failed to plead a class that meets the substantive requirements of FED. R. CIV. P. 23(b) (focusing on predominance) (*id.* at 12); and plaintiff failed to allege any of the Rule 23(a) requirements (*id.* at 19).  The court disagrees, and will take each reason in turn.

### A.     Ascertainability

It is well-settled that a plaintiff bears the burden of establishing all prerequisites under the Federal Rules of Civil Procedure before a class action is proper in the district court. *Gilchrist v. Bolger*, 733 F.2d 1551, 1556 (11th Cir. 1984); *see also Walker v. Jim Dandy Co.*, 747 F.2d 1360, 1363 (11th Cir. 1984) ("For all practical purposes, [the Rule 23 prerequisites] . . . effectively 'limit the class claims to those fairly encompassed by the named plaintiffs' claims.'" (quoting *Gen. Tel. Co. v. Equal Emp't Opportunity Comm'n*, 446 U.S. 318, 330 (1980))). The foremost of Rule 23's requirements is an ascertainable class: "Although not explicit in Rule 23 . . . courts have universally recognized that the first essential ingredient to class treatment is the ascertainability of the class." *Grimes v. Rave Motion Pictures Birmingham, L.L.C.*, 264 F.R.D. 659, 663 (N.D. Ala. 2010) (citations omitted).

Ascertainability depends on the class definition, and a successful definition is one that is "precise, objective, and presently ascertainable . . . by reference to objective criteria." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.222 (2004); *see also DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (per curiam) ("It is elementary that in order to maintain a class action, the class . . . must be adequately defined and clearly ascertainable." (citations omitted)). Unsuccessful class definitions depend on "subjective standards . . . or terms that depend on resolution of the merits (e.g., persons who were discriminated against)." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.222 (2004). Where a proposed class definition in a complaint is so amorphous that it is not ascertainable, the court may dismiss the class allegations on motion by the defendant. *See Earnest v. Gen. Motors Corp.*, 923 F. Supp. 1469, 1473-74 (N.D. Ala. 1996); *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007). "Class members need not actually be ascertained prior to certification, but each individual's class membership must be ascertainable at some stage in the proceeding," meaning it must be "administratively feasible for the court to determine whether a particular individual is a member." *Bush v. Calloway Consol. Group River City, Inc.*, 3:10-CV-841-J-37MCR, 2012 WL 1016871, at *4 (M.D. Fla. Mar. 26, 2012).

The plaintiff's first class definition read as follows:

> Any and all property owners who have been damaged by the emission of waste and hazardous materials, including but not limited to arsenic and BaP, by Defendant's coke producing activities from the Jefferson County, Alabama, facilities for the time period of March 2, 1995 to the present.

(Doc. 6 ¶ 23.)  The amended class definition states:

> Any and all **residential** property owners whose property or any part thereof **falls within a two mile radius of the boundary of the Walter Coke Facility at issue as the boundary and radius are determined on the map attached hereto as Exhibit A**, who have been damaged by the emission of waste and hazardous materials, **specifically carcinogenic polycyclic aromatic hydrocarbons, arsenic, benoz(a)anthracene, benzo(a)pyrene (BaP), benzo(b)fluoranthene, benzo(k)fluoranthene, dibenzo(a,h)anthracene, chrysene, and indeno(1,2,3-cd)pyrene**, by Defendant's coke producing activities from the Jefferson County, Alabama, facilities for the time period of March 2, 1995, to the present.

(Doc. 20 at 6.)

Plaintiff amended the definition to add the bolded and underlined portion above in response to the court's concerns that

> "[u]nder the proposed definition, it must be determined whether property was damaged, by any number of substances or hazardous materials not delineated by plaintiff, and whether or not such damage was caused by the activities at defendant's facilities.  Moreover, the class definition includes 'any and all property owners' who sustained such damage, opening the inquiry to any property, without geographic bounds, where the alleged hazardous emissions could have traveled by air or migrated through groundwater."

(Doc. 18 at 31.) The court dismissed the class claims of the first Amended Complaint on motion by the defendant because the court found the class definition "so open-ended that it could potentially include *any* property owner *anywhere* depending on how far the alleged emissions and groundwater migrations traveled." (*Id.* at 29-30.) In other words, without any

8

objective geographical bounds, it was facially apparent that the class was not ascertainable because the class–by definition–reached as far as wind and water go.

Defendant argues that the class is still not ascertainable because these problems remain: the term "residential owner" is undefined, determining whether a property is "damaged" is merits-based, whether it was caused by the defendant's activities is merits-based, and whether this was associated with the defendant's conduct since March 2, 1995[5] (and not the operations beforehand) will be difficult to determine. (Doc. 22-1 at 8.)

These arguments are premature. When other courts have dismissed a plaintiff's complaint on the pleadings (i.e., before a motion for certification has been filed or any preliminary discovery taken place) based on ascertainability, the class definitions have been

_____

[5] Though the court will not discuss the problems with the date limitation in this opinion, the court agrees with defendant that this is a potential problem. However, it is worth noting that "[c]ourts adjudicating pollution or toxic tort class actions tend to employ a . . . focused rubric, as classes may be somewhat more difficult to compose in cases involving, for instance, air or groundwater pollution in a particular geographic area. In these cases, courts often require plaintiffs to satisfy a two-part test: they must (1) specify a particular group that was harmed during a *particular time frame*, in a particular location, in a particular way; and (2) facilitate a court's ability to ascertain its membership in some objective manner. The first prong of this test stipulates that plaintiffs construct a class definition that limits the boundaries of the class based on geography, *time*, and injury suffered; the second prong echoes the test for administrative feasibility, . . . [so that] the defined class is manageable and does not require extensive individual factual inquiry." 1 NEWBERG ON CLASS ACTIONS § 3:3 (5th ed.) (emphasis added).

intrinsically indefinite. For instance, the defendant cites in his brief a case in which the district court dismissed a class complaint on a 12(b)(6) motion where the proposed class definition consisted of:

> National policyholders who sustained property damages to . . . structures located in the State of Louisiana on or after August 29, 2005 as a result of hurricanes Katrina and/or Rita whose losses were adjusted by or on behalf of National on an 'actual cash value' basis or 'replacement cost' basis for whom National . . . created a damages assessment or estimate of costs to repair or replace said damaged property that indicates the involvement of more than one trade [contractor].

*John v. Nat'l Sec. Fire & Cas. Co.*, No. 06-1407, 2006 WL 3228409, at *4 (W.D. La. 2006). In finding the class not ascertainable, the court suggested that identifying even the first absent member of the class would necessitate making individualized *value* judgments of who needed what, when, and for what price, building by building. *Id.* On appeal, the panel did not reach the issue as to whether this particular definition was ascertainable, but it did note when it is appropriate to dismiss a class allegation on the pleadings alone: "[w]here it is facially apparent from the pleadings that there is no ascertainable class." *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007).

In another example, a district court struck a class complaint on the pleadings when the proposed class definition included: "all litigants who had personal-injury actions pending in any jurisdiction of the United States alleging damages as a result of ingestion of Vioxx, subject to the 'all in' provisions of the [Master Settlement Agreement] [who] consented to

. . . the terms of the MSA for fear of losing their retained counsel." *In re Vioxx Products Liab. Litig.*, MDL No. 1657, 2012 WL 2061883, at *3 (E.D. La. June 6, 2012). The court found that the class would never be ascertainable–at least not before a jury found facts on each potential class member–because, by definition, membership itself depended upon "inherently subjective" criteria such as the "specific circumstances of a purported class member's attorney-client relationship and [his or her] individualized decision to enroll in the MSA." *Id.* This example is somewhat atypical, however, since it involves a motion to strike a class complaint for a case that, while not having the benefit of pre-certification discovery, hardly needed it: the case was one of thousands in an already-settled, seven-years-and-counting MDL proceeding. Plaintiffs usually do not have available such an abundance of pre-discovery evidence from which to posture their class definition and claims.

Another amorphous definition appears in *Earnest v. Gen. Motors Corp.*, where the court struck the class allegations on the pleadings because the class definition included "any persons in the State of Alabama who own or lease, or have in the past owned or leased vehicles equipped with engines and/or engine control modules manufactured, sold, assembled and/or designed by the Defendants such as those in the said vehicles of the named Plaintiffs." 923 F. Supp. 1469, 1473 (N.D. Ala. 1996). This failed to meet "the minimum standards of definiteness" because it could "potentially mean anything . . . at any particular time," to the point that "membership in the class could fluctuate as persons who either owned or leased motor vehicles 'such as plaintiffs'' drove those vehicles through the state, entering

11

at one border and exiting a few hours later at another." *Id.* at 1473-74 & n.5. Without any objective, permanent boundary enabling notification or preclusion, the definition was a sieve.

Outside of inherently subjective and indeterminate class definitions, striking a class claim before a motion for certification (and before the benefit of pre-certification discovery) is rare. Defendant cites other cases in its brief, but none of them involve a court dismissing a claim so early on the grounds that it was "facially apparent . . . that there is no ascertainable class." *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007). This makes sense: the class definition put forth in the complaint is often a working definition–one that will serve to identify relevant inquiries in pre-certification discovery. *See* 7AA CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1785.4 at n.1 (3d ed.) ("In making a determination of whether an action may proceed as a class action, the court necessarily must pass on the appropriateness of the class proposed by plaintiff . . . [the class] definition may be relevant to future discovery and to trial preparation, but it remains subject to change before the decision on the merits and does not establish the class that will be bound by the judgment."). It might be tweaked as the pre-certification discovery process sheds light on the contours of the potential class. *See Campbell v. First Am. Title Ins. Co.*, 269 F.R.D. 68, 74 (D. Me. 2010) ("A court may, in an exercise of its discretion, revise a proposed class definition to avoid [problems].").

It is important to keep in mind the overarching reason that a class must be ascertainable: to determine who will be bound by rulings *once the class is certified*. *See*

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.222 (2004). For a 23(b)(3) class,

ascertainability is also important because the "best notice practicable" must be given to all

class members, which often requires a list of addresses. *See Krueger v. Wyeth, Inc.*, No. 03-

CV-2496, 2011 WL 8984448, at *2 (S.D. Cal. July 13, 2011) ("The California Court of

Appeals describes the purpose of the ascertainability requirement in the following way:

Ascertainability is required in order to give notice to putative class members as to whom the

judgment in the action will be res judicata.") (internal quotations and citations omitted).

　　　　Plaintiff's new proposed definition is not so indeterminate or subjective that it is

"facially apparent . . . that there is no ascertainable class." *John*, 501 F.3d at 445. As noted

above, plaintiff proposes in her Second Amended Complaint the following class definition:

> Any and all residential property owners whose
> property or any part thereof  falls within a two
> mile radius of the boundary of the Walter Coke
> Facility at issue as the boundary and radius are
> determined on the map attached hereto as
> Exhibit A, who have  been damaged by the
> emission of waste and hazardous materials,
> specifically carcinogenic polycycic aromatic
> hydrocarbons, arsenic, benzo(a)anthracene,
> benzo(a)pyrene(BaP), benzo(b)fluoranthene,
> benzo(k)fluoranthene, dibenzo(a
> ,h)anthracene, chrysene, and indeno (1,2,3-
> cd)pyrene, by Defendant's  coke producing
> activities  from the Jefferson County, Alabama,
> facilities for the time period of March 2, 1995 to
> the present.

(Doc. 20 at 6.) The most significant improvement for present purposes is the two-mile

boundary. The objective boundary transforms the class from being one whose outer

13

limits were determined by long-term transient movement of wind and water (which is obviously not ascertainable), to being one whose outer limits are marked on a map in plaintiff's Exhibit A. (Doc. 20-1 at 2.) Defendant correctly points out that this only determines who "is ***not*** a class member," (doc. 22-1 at 7), but the significance of this should not be underplayed. The potential class now has a limited number of members whose addresses can be ascertained.

Defendant emphasizes in its brief the remaining problem in the definition: it only includes those "who have been damaged . . . by Defendant's coke producing activities . . . ." (*See* doc. 22-1 at 7-8.) This language echoes language that rendered the class definitions in other cases unfit upon a motion for certification. *See, e.g., Benefield v. Int'l Paper Co.*, 270 F.R.D. 640, 644-45 (M.D. Ala. 2010) (finding a class not ascertainable because of "contaminated by" language in the definition). But it does not resemble the sort of criteria that the few other cases have found so inherently subjective as to make it facially apparent that there is no ascertainable class from the pleadings alone. That sort of criteria required the court to make value judgments that are only measurable by a jury, such as an individual's specific needs or the motivations of parties within an attorney-client relationship. The likelihood of property damage within a two-mile radius due to contamination can at least plausibly be measured objectively.

In the future, the "damaged by" language might prevent plaintiff's class from being certified, and it might not.  But plaintiff is entitled to pre-certification discovery to determine which will be the case.

After reviewing expert testimony and other evidence, other courts have had a better vantage point from which to decide why a definition fails or succeeds. For instance, in a strikingly similar case, the plaintiffs' two-mile boundary failed on motion for certification because their experts could not say whether *every* home within the boundary showed signs of damages that could have been caused by defendant's paper-manufacturing activity.  *See Benefield*, 270 F.R.D. at 644.

Nevertheless, the court finds that it is not facially apparent that plaintiff's class as defined in the Second Amended Complaint is not ascertainable. Defendant's motion to dismiss on that ground is denied.

### B.    The Rule 23(b) inquiry

The Federal Rules of Civil Procedure require specific conditions to be met if a lawsuit is to proceed as a class action. Rule 23(a) contains four prerequisites, commonly referred to as the requirements of numerosity, commonality, typicality, and adequacy of representation.  To represent a class of absent parties, a plaintiff must show that it and the class meet the four requirements of Rule 23(a) and the requirements of at least one of the categories in Rule 23(b). The requirements of Rule 23 prevent a plaintiff from representing absent entities when it would violate due

process. *See Hansberry v. Lee*, 311 U.S. 32, 44 (1940); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809-812 (1985). The inquiry determines whether a class should be certified so that the case can move forward without the presence or affirmative consent of people whose interests the case puts at stake. *Shutts*, 472 U.S. at 812-813. Before class certification, no absent interests are at stake, and when class certification is denied, only the named plaintiffs–not the absent class members plaintiff sought to represent–are bound by the judgment. *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2379-80 (2011).

Before a motion for certification, a plaintiff's complaint should simply put the defendant on fair notice of "potentially viable" class claims that are being brought against it. *Cf. Burton v. Dist. of Columbia*, 277 F.R.D. 224, 230 (D.D.C. 2011) ("The Supreme Court's ruling in *Wal-Mart* confirms that pre-certification discovery should ordinarily be available where a plaintiff has alleged a *potentially viable* class claim because *Wal-Mart* emphasizes that the district court's class certification determination must rest on a 'rigorous analysis' to ensure '[a]ctual, not presumed, conformance' with Rule 23.") (emphasis added).

Defendants argue in their brief that "class claims that fail to meet the requirements of Rule 23 may be properly dismissed by granting a Rule 12(b)(6) motion." (Doc. 22-1 at 4-5) (citing *McCrary v. Stifel, Nicolaus & Co.*, 687 F.3d 1052, 1059 (8th Cir. 2012)). In *McCrary*, the district court had deferred its decision on a

plaintiff's pending motion for class certification and instead dismissed all–both class and individual–claims on the pleadings for failure to meet the requirements of Rule 23(b)(3). *Id.* at 1055-56. On appeal plaintiffs argued that a district court must first analyze a plaintiff's individual claims before analyzing (or dismissing) class claims. *Id.* at 1059. After noting that the proper question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support his [or her] claims," the court of appeals held that the district court did not have to analyze individual claims first, and affirmed the dismissal of class claims. *Id.* at 1057-59 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)) (internal quotation marks omitted). However, the holding in *McCrary* is too narrow to help defendant in the present case.

For clarity, it should be noted that defendant's quotation of *McCrary* omits a critical clause. The full sentence reads: "*As discussed above*, class claims that fail to meet the requirements of Rule 23 may be properly dismissed by granting a Rule 12(b)(6) motion." *McCrary*, 687 F.3d at 1059 (emphasis added). The "above" discussion to which the court is referring cites three cases for the proposition that "a court may dismiss *securities fraud allegations similar to the ones in this case* when the claims do not satisfy Rule 23." *Id.* at 1057 (emphasis added). All three cases involve certain securities fraud claims that are *categorically* dependant on each individual

plaintiff's state of mind and relationship with their broker, and thus *never* appropriate for class treatment.

In the first case, *Rowe v. Morgan Stanley Dean Witter*, the court defined the main claim, "churning," as "a shorthand expression for a type of fraudulent conduct in a broker-customer/investor relationship." 191 F.R.D. 398, 407 (D.N.J. 1999) (quoting *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 489 (6th Cir.1990)). Churning occurs "when a broker 'overtrades' the account of a customer to generate inflated sales commissions, in violation of Rule 10(b)-5," and as such "is *necessarily* premised on . . . the investment objectives of a given plaintiff." *Rowe*, 191 F.R.D. at 410 (emphasis added). Individuality was likewise embedded in the elements of the claims asserted in the other two cases. *See Moscarelli v. Stamm*, 288 F. Supp. 453, 462 (E.D.N.Y. 1968) (dismissing class claims where all "[f]our theories of recovery . . .suggested in the complaint . . . disclose individual factors *inherent in the relationship* between broker and customer involved in the various purchases."); *Souter v. Tatro*, No. 03-CV-6141, 2004 WL 1574562, at *7 (W.D.N.Y. 2004) (dismissing class claims because "fraud claims based on individualized misrepresentations . . . made to each member of the proposed class . . . [require] proof of the statements made to each plaintiff, the nature of the varying material misrepresentations, and the reliance of each plaintiff upon those misrepresentations" (quoting *Moore v. PaineWebber, Inc*., 306 F.3d 1247, 1253 (2d Cir. 2002)) (internal quotation marks omitted)).

In other words, some claims in *McCrary* depended on each potential class member's individual investment needs to determine whether the defendants' trades were "excessive in size and frequent" as applied to them, and other claims depended on the absent class member's relevant state of mind (such as their reliance or awareness). *McCrary,* 687 F.3d at 1057.  The holding in *McCrary* is narrow in that it only speaks to certain types of securities fraud claims, which by their very elements are incapable of class-wide proof.

Defendant also draws attention to *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205 (9th Cir. 1975), in which the court dismissed class claims "without discovery where it was clear from the complaint and associated public records that the class could not satisfy Rule 23(b)." (Doc. 28 at 8.) *Kamm* adds nothing new. It is distinguishable both as a securities fraud case and as a case in which well-underway parallel proceedings brought by state officials were clearly superior to the class action proposed. *Kamm*, 509 F.2d at 207, 211.

Unlike the plaintiffs in the securities fraud cases above, plaintiff is "entitled to offer evidence to support [her class] claims." *McCrary,* 687 F.3d at 1057.  Plaintiff does not assert statutory claims that categorically depend on an individualized inquiry, such as the inner workings and motivations of a broker-client relationship. If her allegations are true, which the court is required to assume at this stage, plaintiff's class members all have the same, simple relationship with defendant: they own pieces of

19

property around defendant's facility, a facility that allegedly emits harmful substances on property owned by plaintiff and proposed class members. And if these allegations are true, it is at least plausible that plaintiff could prove the elements of trespass, nuisance, negligence, wantonness, and injunctive relief on a class-wide basis. None of these causes of action are categorically unfit for class treatment. This is not to say that once plaintiff offers her evidence it will be sufficient to certify a class, only that she is entitled to offer it and argue its merit.

Defendant's brief can perhaps be read to argue that claims for nuisance, trespass, and negligence in the environmental mass tort context are categorically unfit for class treatment, (see doc. 22-1 at 15-16), at least under a Rule 23(b)(3) theory.[6] (*But see* doc. 22-1 at 18 n.9) ("[T]his case is analogous to *Fisher* and *Labauve* and distinct from the very few environmental contamination cases certified for class treatment under Rule 23(b)(3).") Defendant's brief states that "[d]istrict court[s] in Alabama and elsewhere routinely hold that [these tort claims] . . . cannot be certified under Rule 23(b)(3) because individual, rather than common issues, predominate," and cites a string of cases, each of which was decided on a motion for class certification. (*Id.* at 15-16.) But precedent concerning motions for class certification cannot help defendant at this stage

---

[6]It is unclear at this time under which 23(b) theory plaintiff might attempt to certify a class, since the complaint does not make it explicit. As defendant points out in its brief, the claim for monetary damages makes 23(b)(3) the most likely candidate.

unless the case holds that *no* plaintiff can state a claim for class-wide relief based on these tort claims.

*LaBauve* approaches such a holding. In two "illustrations," the court analyzed why the elements of claims for indirect trespass and nuisance under Alabama law are "chock full of individual-specific inquiries" that "counsel[] strongly against class certification." *LaBauve v. Olin Corp.*, 231 F.R.D. 632, 673, 678 (S.D. Ala. 2005). The court found that the first and fourth elements of trespass–"an invasion affecting an interest in the exclusive possession of his property" and "substantial damage to the res"–require "substantial individualized proof and legal argument." *Id.* at 673. But the court did not expound on whether this problem is truly *inherent* and debilitating in the elements rather than the particular facts of a case.  As for nuisance, the court held that proving "(1) activities that worked hurt, inconvenience, or damage to the complaining party . . . (3) causal relation between the conduct or activity complained of and the hurt, inconvenience, or damage sued for, and (4) damages" requires "considerable individualized showings." *Id.*

Factual circumstances, however, are important. While noting the very real problems with class action treatment for trespass and nuisance claims, the court in *LaBauve* qualified that it had the benefit of having "pored over extensive record evidence." *LaBauve*, 231 F.R.D. at 674. What the court could not find in that record was  an "across-the-board formula" that could propel class claims forward in the case.

*Id.* at 676.  Perhaps factual differences in this case will allow plaintiff to uncover such a formula in pre-certification discovery.

Denying defendant's motion to dismiss at this early stage heeds warnings about the case-specific information required to decide class certification issues. The Eleventh Circuit has stated that "precedent . . . counsels that the parties' pleadings alone are often not sufficient to establish whether class certification is proper, and the district court will need to go beyond the pleadings and permit some discovery and/or an evidentiary hearing to determine whether a class may be certified." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2009). After the parties conduct such discovery, a court will better "understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Castano v. American Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996); *see also Fisher v. Ciba Specialty Chemicals Corp.*, 238 F.R.D. 273, 317 n. 51 (S.D. Ala. 2006) (stating that *Castano* indicates "it is 'necessary' for a district court to go beyond the pleadings for Rule 23 analysis . . . .").  In fact, such caution was the apparent reason for the 2003 amendment to Rule 23(c)(1)(A), which replaced the mandate that a court determine whether to certify a class "as soon as practicable" with the current, more lenient time frame: "at an early practicable time." *See* FED. R. CIV. P. Advisory committee's notes, 2003 Amendments.

For the reasons stated above, defendant's motion to dismiss on the ground that plaintiff has failed to meet the requirements of Rule 23(b) is due to be denied.

## C.    Alleging Rule 23 Requirements

Defendant asserts that plaintiff's class complaint should be dismissed because it fails "to plead facts in support of Fed. R. Civ. P. 23(a)'s four explicit class requirements." (Doc. 22-1 at 19.)   The Eleventh Circuit has said that "[i]n a class action, it is sufficient that a complaint generally give the defendant notice of the nature and scope of the plaintiffs' claims; it is not necessary that the class representatives plead evidence or otherwise meet any burden beyond the minimal Rule 8 standard." *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 882 (11th Cir. 2003). Other than that, however, case law is sparse as to the threshold style and content of a class action complaint because class complaints are so rarely dismissed on the pleadings alone. Defendant's argument is apparently that, at a bare minimum, plaintiff should have recited Rule 23, inserting her facts into the correct subsections. (Doc. 9-1 at 25.) Facing the same contention, one court's  survey of various commentaries on class actions[7] concludes, unremarkably,  that "the complaint must set forth facts sufficient to show

---

[7] The survey includes 3B JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 23.02-2 ("[T]he complaint . . . should allege the existence of necessary facts showing that the prerequisites of (Rule 23(a)) have been satisfied."); 7A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1798 ("[F]or an action to go forward under Rule 23, the pleader must establish that the four requirements set forth in subdivision (a) are satisfied and that the action falls within one of the three categories described in subdivision (b)."); and 4 NEWBERG, CLASS ACTIONS § 7985 ("As a general proposition, facts illustrating compliance with Rule 23 prerequisites should be accommodated by the complaint.").

that the case complies with (the) four criteria listed in Rule 23(a), and that it falls within one of the subsections of Rule 23(b)." *Peak v. Topeka Hous. Auth., City of Topeka*, 78 F.R.D. 78, 81-83 (D. Kan. 1978).

Plaintiff's complaint includes the necessary ingredients.  Reading the Second Amended Complaint liberally, sufficient facts are alleged to support the requirements of Rule 23(a)(1) and Rule 23(a)(2).  Rule 23(a)(1) (numerosity) is supported by the two-mile radius in the class definition. The exact number of class members is not needed; only the approximate size.  *See United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 882 (11th Cir. 2003) ("It is not necessary . . . that class members be specifically identified; the plaintiff need not name names.  In addition, the complaint need not set forth the exact number of class members.  It is sufficient to indicate the approximate size of the class and provide or describe facts making ultimate identification of class members possible when that identification becomes necessary."). Rule 23(a)(2) (commonality) is supported by allegations in the Second Amended Complaint such as "[p]laintiff brings this action for the damages that she (and the Class she seeks to represent) have been subjected to, and are currently subjected to through today, on the property they own."  (Doc. 20 ¶ 4.)  Rule 23(a)(3) (typicality) presents more of a problem because unlike Rules 23(a)(1) and (2), it seems more difficult to allege solely through facts.  However, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge[,] [b]oth serv[ing] as guideposts for determining whether under the

particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are . . . interrelated . . . ." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 n.5 (2011).  Therefore, typicality can be inferred from the same allegations that support commonality.

Finally, "adequate representation is usually presumed." 6 Newberg on Class Actions §18:46.  Plaintiff did state that "[p]laintiff Moore is a representative for the Class listed below."  (Doc. 20 ¶ 5.)  The court finds adequacy of representation can be inferred here under a liberal reading of the Complaint.

For the reasons stated above, defendant's motion to dismiss on the ground that the complaint fails to allege any of the explicit Rule 23 requirements is denied.

## II.    Plaintiff's Claim for Injunctive Relief

"[T]o obtain a permanent injunction, a party must show: (1) that he has prevailed in establishing the violation of the right asserted in his complaint; (2) there is no adequate remedy at law for the violation of this right; and (3) irreparable harm will result if the court does not order injunctive relief."  *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1128 (11th Cir. 2005).

Additionally, because injunctive relief is not a cause of action on its own, but rather a remedy, it "must be based upon a claim which would withstand scrutiny under Fed. R. Civ .P. 12(b)(6)."  *Kimerling Truck Parts, Inc. v. City of Birmingham*, No. CV-

04-CO-00767-S, 2005 WL 4157440, at *6 (N.D. Ala. Nov. 17, 2005) *aff'd sub nom.*

*Kimerling Truck Parts, Inc. v. Feigelson*, 180 F. App'x 846 (11th Cir. 2006).

Defendant argues that plaintiff's claim for injunctive relief should be dismissed with prejudice because: (1) the court did not grant her leave to replead in its previous Order, and (2) her Second Amended Complaint alleges only a "formulaic recitation of the elements." (Doc. 22-1 at 20.)

The previous Order dismissing plaintiff's claim for injunctive relief did not say whether the dismissal was with or without prejudice. (*See* doc. 18 at 40-41.) In light of this ambiguity, plaintiff included an amended claim for injunctive relief in its Second Amended Complaint. (Doc. 20 at 11-12.) Conceding that the inclusion violated Rule 15(a), plaintiff now requests that the court grant leave "to allow the filing of a Third Amended Complaint to include an injunctive relief claim." (Doc. 26 at 2.) The court will grant plaintiff leave to do so with respect to the claim for injunctive relief.

Plaintiff alleges the elements of a claim for injunctive relief in her Second Amended Complaint as well as facts that arguably support the claim: "[p]laintiff's claim is for property damage to the property listed above for contamination emanating from Defendant's property. Plaintiff's property has been, and is being, damaged in that it has lessened value, and Plaintiff is in need of remediation to remove the hazardous substances referenced herein." (Doc. 20 ¶ 14.) Without injunctive relief, plaintiff alleges that "the hazardous substances . . . [will] continue to emanate from Defendant's

facilities . . . [and will] remain on Plaintiff's property and continue to cause damage."
(*Id.* ¶ 15.) Assuming these facts are true, plaintiff's assertion that "there is continuing
irreparable injury to Plaintiff and the Class" and that "Plaintiff and the Class lack
adequate remedy at law," (*id.* ¶ 42) enables her to request "an Order enjoining
Defendant from continuing the conduct described above and requir[ing] Defendant to
remove contaminated soil from the affected property." (*Id.* ¶ 41).

It is well established that cases involving continuing harm to land may be
appropriate candidates for injunctive relief. *See Shell Offshore Inc. v. Greenpeace*, *Inc.*,
864 F. Supp. 2d 839, 850 (D. Alaska 2012) ("[I]f plaintiff demonstrates that effective
legal relief can be secured only by a multiplicity of actions, as, for example, when the
injury is of a continuing nature . . . [or] if defendant's acts pose a threat to some unique
property interest . . . the court may issue an injunction . . . ." (quoting 11A CHARLES
ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2944 (2d
ed. 1987))); *see also, e.g., In re Gen. Dev. Corp.*, 84 F.3d 1364, 1370 (11th Cir. 1996)
("[G]iven the unique nature of land, it is well established that money damages to a
purchaser of land is inadequate."); *OM Group, Inc. v. Mooney*, No. 2:05-CV-546, 2006
WL 68791, at *9 (M.D. Fla. 2006) (noting that a substantial threat of losing one's home
constitutes irreparable harm). Allowing plaintiff to amend her complaint to dot the i's
of this claim will be allowed.

The court will grant plaintiff's Motion for Leave to Amend Complaint to replead a claim for injunctive relief and deny defendant's Motion for Partial Dismissal.

## **CONCLUSION**

For the reasons stated above and as directed in the Order entered contemporaneously herewith:

Defendant's Motion to Dismiss on the basis that plaintiff failed to plead an ascertainable class will be denied because the court finds the proposed definition is sufficient at this stage.

The defendant's motion to dismiss on the basis of the inability of plaintiff to show a viable Rule 23(b) class will be denied because the court finds that defendant's motion is premature at this stage.

The defendant's motion to dismiss on the basis of plaintiff's omission of Rule 23's elements will be denied because plaintiff's complaint alleges sufficient facts to assert a plausible Rule 23 class.

The defendant's motion to dismiss on the basis of plaintiff's failure to sufficiently plead a valid state law claim of injunctive relief will be denied, and the court will grant plaintiff leave to amend the complaint to add that count.

**DONE**, this 30th day of September, 2013.

*Sharon Lovelace Blackburn*

SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE

28